[No. 82-40607-2.    Division Two.    April 23, 1970.]

LONGVIEW FIBRE COMPANY, *Appellant,* v. TOLLIE ROBERTS *et al., Respondents.*

*Studley, Purcell & Spencer* and *W. R. Studley,* for appellant.

PETRIE, J.—Defendant's employees trespassed upon plaintiff's property and removed over 100,000 board feet of timber situated thereon. The issue presented by this appeal is whether or not plaintiff is entitled to treble damages as

against the defendant employer. The trial court awarded single damages and plaintiff appeals. Plaintiff accepts the findings of fact entered by the court, but contends that those findings require imposition of treble damages pursuant to the provisions of RCW 64.12.030. Defendant has failed to provide us with brief or argument to support the judgment. However, it is apparent that his contention, at trial, was simply that his actions brought him within the provisions of RCW 64.12.040, exculpating him from the onus of treble damages.

Interpreting these two statutes, our Supreme Court has clearly declared that one who cuts the timber of another in reckless disregard of the consequences subjects himself to civil damages in the amount of thrice the value of the on-site value of the timber. *Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d 879, 289 P.2d 975 (1955); and further, that the necessary element of willfulness may be established by the circumstances. *Blake v. Grant*, 65 Wn.2d 410, 397 P.2d 843 (1964).

From the uncontested findings, we glean the following factual pattern. In 1966 defendants entered into a contract with O. P. Kreps, Jr., to remove merchantable timber from Kreps' property in Klickitat County. The south boundary of Kreps' property constituted the north boundary of plaintiff's property. Defendant Roberts proceeded to locate and mark the east, north and west boundary of Kreps' property. Two of defendant's employees, both hired as timber fallers and neither of whom had any knowledge, skill, training or experience in running boundary lines, attempted unsuccessfully to locate and run the south line. They advised Roberts of their lack of success and requested Roberts to secure the services of someone skilled and experienced in such matters. Roberts ignored such request and made no further attempt to locate or run the line common to plaintiff's and Kreps' property, and specifically did not consult with plaintiff at any time as to the location thereof.

Although the southeast corner of Kreps' property had been lost or destroyed (presumably prior to commencement

of defendant's logging operations), the southwest corner was well referenced and marked, and was found with relative ease by plaintiff's employees who had some skill and experience in locating and running lines but who were neither surveyors nor engineers. It would have been possible for anyone with reasonable skill and experience to have started at this marked southwest corner of Kreps' property and to have established by hand compass the south line of said property within a variance of not to exceed 3 degrees.

On June 29, 1967, defendant's employees were discovered cutting and falling timber on plaintiff's property at least 800 feet south of the common boundary, said distance representing a compass variance of at least 39 degrees from the south line of Kreps' property starting from the southwest corner thereof. Three days prior thereto, defendant Roberts had been forced to leave the logging operations due to bursitis in his elbow, but he had participated in the operations up to that time. Prior to leaving, Roberts instructed his employees not to cut farther south, but to turn and go east because of the lack of knowledge of the south line. Notwithstanding these instructions, Roberts' employees did proceed to cut timber farther south, as well as east, even though they intended to carry out their employer's instructions. The cutting of timber to the south, after Roberts departed, was due solely to the gross carelessness and negligence of the employees.

After entry of the findings of fact—as substantially set forth above—the court awarded single damages only. The reason for not awarding treble damages is set forth in conclusion of law No. 5 as follows:

> Defendant's employees having carelessly and negligently disregarded the instructions of defendant, Tollie Roberts, while he was absent from the logging operation, the trespass thereby became an "involuntary" trespass as to these defendants, personally, thereby exculpating said defendants, and each of them, from liability for treble damages as provided by the aforesaid statute because such statute, being punitive in nature, was not intended by the legislature to impose vicarious liability.

We must concede that there is language in the case of *Luedinghaus v. Pederson,* 100 Wash. 580, 171 P. 530 (1918) which would tend to support the proposition that a voluntary trespass by an employee can, under some circumstances, be considered involuntary as to the employer. We note, however, in *Luedinghaus,* the plaintiff therein had expressly granted defendant therein permission to cut and take some timber up to a clearly marked line; and in express violation of their foreman's orders, several employees of defendant nevertheless trespassed the line, cut and removed timber from across the marked-off line. In that sense, a deliberate act by an employee may conceivably not be ascribed to the employer. Such are clearly not the facts in the case at bar.

The force of the general language in *Luedinghaus* appears to be suspect today. Certainly in *Bill v. Gattavara,* 24 Wn.2d 819, 167 P.2d 434 (1946), the court laboriously demonstrated that the culpable trespassers were independent contractors of the defendants and not merely employees, thus relieving the defendants therein from liability for trespass. In other states, under similar statutes, the rule of vicarious liability and application of the treble damages penalty upon an employer subsequent to trespass by his employees has been clearly established; *Gates v. Comstock,* 113 Mich. 127, 71 N.W. 515 (1897); even when the employee's trespass is contrary to the employer's orders; *Helppie v. Northwestern Drainage Co.,* 127 Minn. 360, 149 N.W. 461 (1914).

██  The trespass having been admitted by the pleadings and established by the findings, the burden of establishing the defendant's affirmative defense that the trespass was inadvertent and not willful fell upon the defendant. *Fredericksen v. Snohomish County,* 190 Wash. 323, 67 P.2d 886, 111 A.L.R. 75 (1937). The defendant has not met that burden by simply establishing that his careless employees violated his general instruction not to cut timber farther south.

The essence of the element of willfulness in this case lies

in the defendant's failure to locate a boundary; his failure to employ persons even reasonably skilled or experienced in running boundary lines; his ignoring the request of his own employees to employ persons so skilled; his failure to consult with plaintiff in any manner in an attempt to locate boundary corners; his decision to proceed with the logging operations without having any reasonable knowledge of the location of the corners or the line; and his actual participation in those operations up to 3 days prior to discovery of the trespass. Those facts conclusively demonstrate to us that the defendant elected to proceed with the operations in reckless disregard of the probable consequences.

The judgment is reversed and this case remanded with direction to enter judgment consistent herewith.

ARMSTRONG, C. J., and PEARSON, J., concur.