Ron C. ANDERSEN, d/b/a J & R Enterprises, Lynn Cluff and Eugene Heyworth, all the named defendants d/b/a Wrangell Mountain Enterprises, Appellants,

v.

James H. EDWARDS and Maxine D. Edwards, Appellees.

No. 4586.

Supreme Court of Alaska.

Jan. 30, 1981.

Keith A. Christenson, Johnson, Christenson & Associates, Anchorage, for appellants.

Olof K. Hellen, Hellen & Partnow, Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

Wrangell Mountain Enterprises [hereinafter Wrangell] appeals a jury verdict against it for wrongfully cutting trees beyond the amount reasonably necessary to construct a roadway within a state reserved section line easement. Numerous points are raised on appeal, several of which we find meritorious. Consequently, we reverse the judgment.

In May, 1975, Wrangell, a development partnership, acquired property in the vicinity of McCarthy, Alaska, adjacent to property owned by appellees [hereinafter the Edwardses]. Included in the development plans was the construction of a three mile public road running partially along a section line easement, through property owned by the Edwardses and an adjacent parcel of land jointly owned by Mr. Woods, the Schneiders, and Lovernes [hereinafter referred to as the Schneider parcel]. Both parcels were obtained through a conveyance from the state. In the contracts for sale of these parcels, the state reserved for "itself, its successors and assigns a 100 foot right-of-way along [the] section line" between the two parcels.[1] Pursuant to AS 19.10.010, the

---

1. The Edwardses do not challenge appellants' *characterization of the interest created as an* easement. We think this characterization is correct. The language in the conveyance from the state is clearly indicative of an easement and not a fee. *See* 3 R. Powell, Real Property ¶ 407, at 34–35 (Rev. ed. 1979). In *Wessells v.* *State*, 562 P.2d 1042, 1046 n.5 (Alaska 1977), we noted that "[a] 'right of way' is generally considered to be a class of easement." (citations omitted). In *Wessells*, we also recognized the state's authority to reserve the right to create such easements. *Id.* at 1046 n.6.

100-foot tract was dedicated for use as a public highway.[2]

Before construction began, Wrangell obtained a letter from the Alaska Department of Natural Resources, Division of Lands, verifying the width of the easement as a maximum of fifty feet on either side of the section line. Additionally, Wrangell received a letter from the Alaska Department of Highways stating that it had "no objection to the use of [the] subject section line reservation ... to construct a public access roadway." The letter also stated, however, that the state assumed no liability or responsibility for any damages resulting from the construction and use of an access road. Also, before construction began, Mr. Edwards expressed his concern to Wrangell regarding the impact of the roadway on his property. Wrangell assured him that it "would do as little damage to the area as possible."

In June or July, 1975, Wrangell constructed a roadway along the section line. Although the roadway itself measured approximately twenty-five feet in width, Wrangell cleared the easement to nearly the full 100-foot width.

The Edwardses filed a complaint alleging that Wrangell had wrongfully cut and carried away trees from the Edwardses' and Schneiders' parcels, depriving them of the economic and esthetic value of the trees and lowering the property value of the parcels. The complaint sought damages in excess of $25,000, as well as treble damages under AS 09.45.730.[3] Wrangell filed four counterclaims, two of which it dropped before jury deliberations.[4] The jury found the two other counterclaims nonmeritorious. The jury returned a verdict in favor of the Edwardses, awarding $25,000.00 in actual damages which was trebled under AS 09.45.730. This appeal followed.

## I. AUTHORITY TO CONSTRUCT THE ROADWAY

■ The trial court granted a partial directed verdict holding that, as a matter of law, Wrangell possessed the authority to construct the section line roadway. The Edwardses contend in their appellees' brief that this ruling was an error. They did not, however, file a cross-appeal. We refuse to consider appellees' argument since it was not properly raised.[5] *Alaska Brick Co. v. McCoy*, 400 P.2d 454, 457 (Alaska 1965), compels this conclusion. In *McCoy*, appellee in its brief sought a modification of the judgment increasing the attorney's fee award. Appellee neither filed a cross-appeal nor a cross-statement of points in appellant's appeal. We held: "Orderly procedure will not permit an appellee to attack a judgment for the first time in his brief in the appellant's appeal." *Id.* Similarly, we will not pass upon this question here.

## II. THE SCOPE OF THE USE PERMITTED BY THE EASEMENT

Wrangell contends that the trial court erred in ruling that the state's express reservation permitted Wrangell to use the reservation to the extent necessary to construct a roadway and, thus, that it was a jury question whether the use of the ease-

---

2. AS 19.10.010 provides:
   "*Dedication of land for public highways.* A tract 100 feet wide between each section of land owned by the state, or acquired from the state, and a tract four rods wide between all other sections in the state, is dedicated for use as public highways. The section line is the center of the dedicated right-of-way. If the highway is vacated, title to the strip inures to the owner of the tract of which it formed a part by the original survey."

3. AS 09.45.730 provides in part:
   "*Trespass by cutting or injuring trees or shrubs.* A person who cuts down, girdles, or otherwise injures or carries off a tree, timber,

or shrub on the land of another person or on the street or highway in front of a person's house ..., without lawful authority is liable to the owner of that land ... for treble the amount of damages which may be assessed in a civil action."

4. Ron Anderson, a partner in Wrangell, admitted that the two claims were petty and brought out of spite because of the original litigation.

5. Appellate Rule 9(e) provides that this "court will consider nothing but the points so stated [in the statement of points on appeal]."

ment was reasonable or excessive.[6] Wrangell maintains that "no such requirement of reasonableness exists where there is an expressly reserved and dedicated defined highway right-of-way...." Therefore, it asserts that there is an absolute right to clear the right-of-way within the 100-foot limit of the reservation. The Edwardses, on the other hand, argue that only the amount of trees reasonably necessary to construct the roadway may be cleared. We agree with the Edwardses and hold that the trial court did not commit error.

█ The general rule regarding the scope of the use of a right-of-way easement was stated in *Aladdin Petroleum Corp. v. Gold Crown Properties*, 221 Kan. 579, 561 P.2d 818, 822 (1977):

"The law appears to be settled that where the width, length and location of an easement for ingress and egress have been expressly set forth in the instrument the easement is specific and definite. The expressed terms of the grant or reservation are controlling in such case and consideration of what may be necessary or reasonable to the present use of the dominant estate are not controlling. If, however, the width, length and location of an easement for ingress and egress are not fixed by the terms of the grant or reservation the dominant estate is ordinarily entitled to a way of such width, length and location as is sufficient to afford necessary or reasonable ingress and egress."[7]

"To sustain [a] contention [that an easement grants the right to use any and all of a strip of land], the plaintiff must point to language in the deed which clearly and definitely fixes the width of the right of way...." *Barton's Motel, Inc. v. Saymore Trophy Co.*, 113 N.H. 333, 306 A.2d 774, 775 (N.H.1973).[8] Moreover, it has been generally stated:

"A grant or reservation of a right of way 'over' a particular area, strip, or parcel of ground is not ordinarily to be construed as providing for a way as broad as the ground referred to."

Annot., 28 A.L.R.2d 253, 265 (1953).

█ In *Hyland v. Fonda*, 44 N.J.Super. 180, 129 A.2d 899 (N.J.App.Div.1957), the court considered whether the reservation in a deed entitled the grantor's assigns to use the entire reserved strip. The deed stated:

"Reserving, however, unto the party of the first part [Scientific Research Corporation], its successors and assigns the right of ingress and egress for roadway purposes along a strip 25 feet in width along the entire northerly boundary for roadway purposes, together with the right to dedicate said strip, together with any additional land of the party of the first part for roadway purposes whenever a municipality shall accept the same as a public thoroughfare."

129 A.2d at 901. The court stated:

"We cannot say there is no ambiguity on the face of the grant here involved concerning the matter of the physical area over which the defendants have *a present right* of roadway use. The language of the reservation does not specifically describe the intended *roadway* as 25 feet in width ... it provides a 'right of ingress and egress for roadway purposes along a strip 25 feet in width,' etc. This kind of ambiguity is frequently found...." (emphasis in original; citation omitted).

129 A.2d at 904. Similarly, here neither the reservation in the contract for sale nor the statutory dedication describe the intended roadway as 100 feet in width. In fact, the statutory dedication states that 100-foot-wide tracts are "dedicated for use as public highways." This is analogous to the grant in *Hyland* for a right-of-way "for roadway

---

**6.** The court instructed the jury:

"The Court has determined as a matter of law that the defendants had the right to use the right of way to construct a public road, but that the reasonableness of that use is for determination by the jury."

**7.** *See Hyland v. Fonda*, 44 N.J.Super. 180, 129 A.2d 899, 903–04 (N.J.App.Div.1957); *Barton's Motel, Inc. v. Saymore Trophy Co.*, 113 N.H. 333, 306 A.2d 774, 775–76 (1973).

**8.** *Accord*, 3 Powell, Real Property ¶ 415, at 34–183 (Rev. ed. 1979).

purposes." The express language of the dedication suggests that the legislature intended only that the amount of land necessary for use as public highways be dedicated. Consequently, we believe that the reference to width in the reservation is ambiguous as to whether it refers "to the width of the way, or is merely descriptive of the property over which the grantee may have such a way as may be reasonably necessary." *Id.*[9] Consequently, Wrangell was entitled to make only reasonable use of the right-of-way.

■ Although the result we reach may generate litigation because of disputes over what constitutes reasonable use, the "result will avoid a construction of the grant of a right of way on and over [a] parcel of land that would unduly restrict its use." *Alban v. R. K. Co.*, 15 Ohio St.2d 229, 239 N.E.2d 22, 25 (Ohio 1968). Moreover, this result will prevent needless destruction of property by insuring that the construction of roadways will be accomplished with care.[10]

### III. THE BURDEN OF PROOF

■ Wrangell contends that the trial court erred in giving instruction No. 14, which provides in part:

"[T]he plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove [that] the defendants wrongfully cut trees and removed timber on plaintiff's property and the adjoining property.

.   .   .   .   .

The defendants have the burden of establishing by a preponderance of the evidence all of the facts necessary to prove [that] they cleared away only those trees that were reasonable and necessary for the construction of the roadway."

Wrangell argues that the court erred in imposing on it "the burden of proof or persuasion to establish the reasonableness of the cutting and clearing." We agree.

■ As a general rule, the plaintiff in a tort action has the burden, throughout the trial, of proving the nature of the harm, the defendant's share in causing the harm, the injuries from the harm, and the damages suffered. *See generally* J. Wigmore, Evidence § 2486, at 275–76 (3d ed. 1940); C. McCormick, Law of Evidence § 337, at 785–89 (2d ed. 1972). The Edwardses do not advance any reason, nor do we find any, for not following this rule in this case. Consequently, the burden was on the Edwardses to show that Wrangell committed the alleged acts "without lawful authority." This burden did not shift to Wrangell.[11]

■ Instruction No. 14 is internally conflicting in this regard. The instruction initially advises the jury that the burden rests with the plaintiff to show that the defend-

---

9. *See Barton's Motel, Inc. v. Saymore Trophy Co.*, 113 N.H. 333, 306 A.2d 774, 775–76 (1973) ("the grant of 'a right to pass and repass on foot or by vehicle in common with others . . . along a strip of land fifty feet (50′) in width' fixed the outward limits wherein the right of way was to be exercised, but is ambiguous as to whether the use of the whole 50-foot width was granted for this purpose"); *Alban v. R. K. Co.*, 15 Ohio St.2d 229, 239 N.E.2d 22, 24 (1968) (grant of "right of way on and over" a parcel of real property described by metes and bounds does not create a way over all of the property described); Annot., 28 A.L.R.2d 253, 265–67 (1953). *Contra Onorati v. O'Donnell*, 3 Mass. App. 739, 326 N.E.2d 367 (Mass.App.1975) (where description of easement is clear, explicit and free from ambiguity, it is inappropriate to restrict vehicular use to less than the full 20 feet granted).

10. *Cf. Wessells v. State Dept. of Highways*, 562 P.2d 1042, 1050 (Alaska 1977) (although grant of easement should be interpreted according to the reasonable expectation of the parties, it is not reasonable to think parties intended extensive destruction of the property.)

11. In *Judkins v. Carpenter*, 189 Colo. 95, 537 P.2d 737, 738 (1975), the court stated:

"The burden of proof, which rests upon a party to establish the truth of a given proposition, never shifts. Once the person having the burden of proof has established a prima-facie case, the burden of going forward shifts to the other side. '[I]t then becomes the duty of the defendant to go forward with his testimony. But in no sense does such presumption cast a burden [of proof] on the defendant. . . . The burden to establish his case does not shift from the plaintiff to the defendant, but continues throughout the trial.' " (citation omitted).

ants wrongfully cut and removed the plaintiffs' timber. This part of the instruction is correct. Nevertheless, since the cutting of the timber was wrongful only to the extent it was unreasonable, it was contradictory to instruct the jury that the defendants had the burden to prove they "cleared only those trees that were reasonable and necessary for construction of the roadway." The burden was on the plaintiffs to show that the defendants' actions were unreasonable. Thus, the trial court committed error.

We need not decide, however, whether the error, standing alone, would require reversal because, as discussed in section IV of this opinion, reversal is required since an improper measure of damages was utilized. On retrial, damages cannot be calculated without determining anew what clearing was reasonable and necessary, thus, this is not a case where liability and damage issues may be determined separately. *See City of Fairbanks v. Nesbett*, 432 P.2d 607 (Alaska 1967); *Dowling Supply and Equipment v. City of Anchorage*, 490 P.2d 907 (Alaska 1971).

## IV. THE MEASURE OF DAMAGES

In Instruction No. 21, the trial court informed the jury that the "measure of damages for trespass is the expense of restoring as nearly as reasonably possible the Edwards to the position they enjoyed before the trespass." Wrangell argues that the cost of restoration is an inappropriate measure of damages for this trespass and the correct measure is either the value of the trees as timber or the diminution in value of the land caused by the timber removal. We hold that the trial court erred in using the cost of restoration as the measure of damages in this case.

In *Wernberg v. Matanuska Electric Association*, 494 P.2d 790, 794–95 (Alaska 1972), this court approved a jury instruction which

allowed the jury to apply either the diminution in value or the value of trees measure of damages. This holding, however, did not foreclose the possibility of a cost of restoration instruction in an appropriate case. First, there was no claim in *Wernberg* that the severed trees had any special value to the plaintiff. Second, although appellant asserted that the instruction constituted error, he did not explain what the correct legal formula should be.[12] *Id.* at 794. Accordingly, we were not required to pass upon the propriety of a cost of restoration instruction, but only on the impropriety of a diminution in value or value of trees instruction.

We believe the appropriate rule is that if the cost of restoring the land to its original condition is disproportionate to the diminution in the value of the land caused by the trespass, the restoration measure of damages is inappropriate unless there is a "reason personal to the owner" for restoring the original condition. Restatement (Second) of Torts § 919, comment (b) (1977). Thus, in *G & A Contractors, Inc. v. Alaska Greenhouses, Inc.*, 517 P.2d 1379, 1385 (Alaska 1974), we affirmed the judgment of the lower court awarding damages based on a cost of restoration measure of damages. Supporting the award was the finding of the trial court that "Greenhouse uses its property for the purposes peculiar to its business," *id.* at 1382, and that, therefore, cost of restoration was appropriate. The plaintiff's intended use of the damaged property "was to create a showplace in connection with his nursery business." *Id.* at 1387. This was a "reason personal to the owner" justifying restoration damages.

Although the rationale of *G & A* allows the recovery of the cost of restoration for damage done to a landowner's property in such appropriate circumstances,[13] we do not believe this presents such a

---

12. Appellant did assert that he should be allowed to recover for "infringement upon the individual pleasure or personal pleasure," *Wernberg*, 494 P.2d at 795, but this was apparently a generalized claim, not supported by evidence of special value.

13. *See, e. g., Samson Constr. Co. v. Brusowankin*, 218 Md. 458, 147 A.2d 430, 433 (1958) (plaintiff's homesite was stripped of trees such that it was "bare as a board but not as smooth"); *Schankin v. Buskirk*, 354 Mich. 490, 93 N.W.2d 293, 296 (1958); *Rector, Etc. v. C. S.*

case. This is not an instance where, because of their beauty, location, quality, size or other particular features, the trees were of peculiar value to the landowner. They are not akin to ornamental trees.[14] The severed trees were without special value beyond the fact that they were located on the Edwardses' property. Additionally, this is not a situation where there is a reasonable likelihood that the trees will be restored.[15] Consequently, we hold that the diminution in value of the property or the economic value of the timber cut was the appropriate measure of damages.

### V. TREBLE DAMAGES UNDER AS 09.45.730

AS 09.45.730 provides that a "person who cuts down ... timber ... without lawful authority, is liable to the owner ... for treble the amount of damages...." Wrangell contends that "treble damages are appropriate where the damages awarded are based on the lumber or timber value of the trees but are clearly inappropriate where damages are assessed on some other basis." We reject this contention.

We adopt the reasoning of the court in *Schankin v. Buskirk*, 354 Mich. 490, 93 N.W.2d 293, 295–96 (1958), which rejected a similar argument:

> "As to the damages involved, it is settled that the damages that are to be trebled under the statute represent not merely the value of the timber cut but damages to the freehold as well. Generally speaking, damages in trespass to land are measured by the difference between the value of the land before the harm and the value after the harm, but there is no fixed, inflexible rule for determining, with mathematical certainty, what sum shall compensate for the invasion of the

interests of the owner. Whatever approach is most appropriate to compensate him for his loss in the particular case should be adopted. Thus, the damages awarded in [our previous decision] reflected, in part, the value of the timber taken and, in part, the cost of restoring the land to a condition of usefulness—by filling up stump holes and cleaning up the toppings and other debris left behind by the trespassers." (citations omitted).

### VI. PREJUDGMENT INTEREST ON A VERDICT BASED ON AS 09.45.730

Wrangell contends that it was error to award any prejudgment interest for the damages awarded under AS 09.45.730. Alternatively, it contends that the interest should be awarded only on the compensatory portion of the award, not the punitive portion. We agree with this latter contention.

Wrangell's initial contention is based on *Ventoza v. Anderson*, 14 Wash. App. 882, 545 P.2d 1219, 1230 (Wash.App. 1976). In *Ventoza*, the court held that under a statute very similar to AS 09.45.730, prejudgment interest could not be awarded on either the compensatory or punitive portion of the treble damage award. We believe that holding sweeps too broadly. Punitive damages are not compensation for actual physical harm, and prejudgment interest is generally not awarded on punitive damages. *Blake v. Grant*, 65 Wash.2d 410, 397 P.2d 843, 845 (Wash.1964). On the other hand, actual damages are compensatory and the interest on this award is of the same character. To refuse interest on the compensatory portion would be unfair to the injured party. *Beech Aircraft Corp. v. Harvey*, 558 P.2d 879, 888 (Alaska 1976). Consequently, we hold that prejudgment

---

*McCrossan, Inc.*, 306 Minn. 103, 235 N.W.2d 609, 610–11 (1975); *see also* D. Dobbs, Remedies § 5.1 at 316 (1973).

**14.** Edwards did testify that he liked having patches of "nice straight trees" that were not thickly overgrown, but we do not think that this brings this case within the principle of *G & A*.

**15.** "[I]f the plaintiff is unlikely to repair for any reason and is likely instead to sell, then diminution in value rather than repair costs would be a more appropriate measure." D. Dobbs, Remedies § 5.1 at 317 (1973).

interest may be awarded on the compensatory portion of the award but not the punitive portion.[16]

## VII. THE SCHNEIDER PARCEL

The Edwardses' claim sought damages not only for the injury caused to their parcel by the cutting, but also for injury caused to the Schneider parcel. Wrangell argues that because the Edwardses had no interest, or possession of, the trees on the Schneider side of the section line, the Edwardses could not bring an action for trespass since possession is the basis of such an action. The Edwardses contend that they received a valid assignment of the cause of action from the owners of the Schneider parcel.

Mrs. Schneider testified that after the trees were cut, the Schneiders orally gave Mr. Edwards the rights to the trees. She also agreed that she intended to let Mr. Edwards "have any rights that [she] might have with respect to damages to that property adjoining his." The oral assignment was later confirmed by a letter from the Schneiders stating "we give you [Mr. Edwards] legal consent to take our portion [of the trees]." Thereafter, the owners of the Schneider parcel conveyed by quitclaim "any interest of any kind which they may have in the damages which have been claimed in a Complaint filed by James H. Edwards and Maxine B. Edwards."

It is settled that an assignment may be made of a cause or right of action for trespass on, or injury to, land.[17] Specifically, a cause of action for the unlawful

cutting and removal of timber may be assigned.[18] Moreover, a claim for damages to real property may be assigned without assigning or transferring the title or possession of the property.[19] We see no reason to deviate from these rules. It has been stated that a cause of action can be assigned if it survives.[20] AS 09.55.570 provides in part:

> "All causes of action by one person against another, whether arising on contract or otherwise, except those involving defamation of character, survive to the personal representatives of the former and against the personal representatives of the latter."

Therefore, we hold that the cause of action for unlawful cutting of timber may be assigned even though the owners of the Schneider parcel did not transfer any interest or possession in the land to the Edwardses.

The general rule regarding the creation of an assignment has been stated as follows:

> "The creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances as well."

*Rivan Die Mold Corp. v. Stewart-Warner Corp.*, 26 Ill.App.3d 637, 325 N.E.2d 357, 361 (Ill.App.1975).[21] Moreover,

> "an assignment may be oral or written and no special form is necessary provided that the transfer is clearly intended as a

---

16. *Casto v. Arkansas-Louisiana Gas Co.*, 562 F.2d 622, 625–26 (10th Cir. 1977), supports our conclusion. In *Casto*, the trial court awarded interest on a personal injury award and a punitive damage award connected with the injury. The Tenth Circuit affirmed the award of interest on the personal injury part but reversed the award of interest on the punitive damage part.

17. *United Verde Copper Co. v. Jordan*, 14 F.2d 299, 301 (9th Cir.), *cert. denied*, 273 U.S. 734, 47 S.Ct. 243, 71 L.Ed. 865 (1926); *Stapp v. Madera Canal & Irrigation Co.*, 34 Cal.App. 41, 166 P. 823, 825 (1917); *Peterson v. Lake Superior Dist. Power Co.*, 255 Wis. 584, 39 N.W.2d 706, 708 (1949).

18. *White v. Gordon*, 213 Ga. 730, 101 S.E.2d 759, 762 (1958); *J. H. Leavenworth & Son v. Hunter*, 150 Miss. 245, 116 So. 593, 595–96 (1928).

19. Stapp, 166 P. at 825.

20. *See generally Olmstead v. Allstate Ins. Co.*, 320 F.Supp. 1076, 1078 (D.Colo.1971).

21. *See generally Lil' Red Barn, Inc. v. Red Barn System, Inc.*, 322 F.Supp. 98, 106–07 (N.D.Ind. 1970).

present assignment of the interest held by assignor."

*Matter of Estate of Vaughn*, 38 Or.App. 29, 588 P.2d 1295, 1297 (Or.App.1979).[22]

We believe that sufficient evidence was presented to create a jury question regarding the formation of an assignment. Mrs. Schneider's testimony regarding an oral assignment and the written documents submitted certainly indicate that there was a present intent to assign the cause of action. Thus, the trial court correctly denied Wrangell's motion for a directed verdict regarding the cause of action for injury to the Schneider parcel because it cannot "be said that fair-minded jurors in the exercise of reasonable judgment could reach but one conclusion on the issue in controversy." *Beaumaster v. Crandall*, 576 P.2d 988, 994 (Alaska 1978).

## VIII. MISCELLANEOUS CONTENTIONS

Wrangell raises the following other contentions: (1) that the trial court erred in admitting the depositions of two Wrangell partners; (2) that the trial court erred in admitting testimony regarding evidence of discontent between the parties; (3) that the trial court erred in treating the cause of action as a trespass to land rather than a trespass to chattels; and (4) that the verdict of the jury was based on passion or prejudice and not founded on the evidence. We regard each of these contentions as frivolous and not meriting any further discussion. Wrangell also argues that no attorney's fees should have been awarded or, alternatively, that the award was excessive. We need not address this issue since the Edwardses are no longer the prevailing party and, thus, are not entitled to attorney's fees.

The judgment is REVERSED and REMANDED to the superior court for further proceedings consistent with this opinion.

**22.** *See also In re King-Porter Co.*, 446 F.2d 722, 727 n.9 (5th Cir. 1971) ("oral assignment is fully enforceable"); *Commodore v. Armour & Co.*, 201 Kan. 412, 441 P.2d 815, 820 (1968) (no particular form is necessary to effect a valid assignment).