MATANUSKA ELECTRIC
ASSOCIATION, INC.,
Appellant,

v.

Mark D. WEISSLER, Appellee.

No. S–738.

Supreme Court of Alaska.

Aug. 1, 1986.

Ronald L. Baird, Kemppel, Huffman & Ginder, Anchorage, for appellant.

William F. Tull and David Golter, William F. Tull & Associates, Palmer, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This appeal arises from a judgment, after trial by the superior court, granting appellee Mark Weissler treble damages, prejudgment interest, costs and attorney's fees against appellant Matanuska Electrical Association (MEA), for cutting trees on Weissler's property outside of the area granted in an easement. The appeal presents four issues. First, MEA alleges that the court improperly awarded treble

damages under AS 09.45.730 [1] to Weissler. Second, MEA argues that Weissler should not have recovered on his ex-wife's claims after she requested, and the superior court granted, a motion to dismiss her as a co-plaintiff. Third, MEA claims that the superior court erred in calculating prejudgment interest on the total award which included the treble damages award. Finally, MEA asserts that the court should not have awarded costs to Weissler without giving MEA a hearing pursuant to Civil Rule 79. We conclude that MEA is liable for treble damages and that Weissler should recover for the full amount of damage to the property. We reverse the trial court's prejudgment interest determination and remand for a hearing on costs.

## I. STATEMENT OF FACTS AND PROCEEDINGS BELOW

The facts are largely undisputed. On May 23, 1980, Weissler and Mary T. Wadke, then his wife, purchased a 2.1 acre lot in the Finger Lakes Southview Subdivision near Palmer, Alaska. Weissler and Wadke purchased the lot intending to build a house. They owned the property as tenants by the entirety, intending to share equally in ownership benefits and obligations. Weissler built the house himself and both Weissler and Wadke resided in the house prior to its completion.

After construction had progressed to a point allowing electrical service, Weissler and Wadke contacted MEA. They requested that MEA extend service to their house. They soon signed a number of documents regarding electrical service, including an easement. The easement provided, in part, that MEA had the right:

> to cut, trim and control the growth by chemical means, machinery or otherwise of trees and shrubbery located within ____ feet of the center line of said line or system, or that may interfere with or threaten to endanger the operation and maintenance of said line or system....

The blank in this standard easement form specifying the easement width was never filled in. Weissler testified that he left the line blank because he wished to meet with an MEA engineer to discuss the extent of necessary clearing. Weissler subsequently met with two MEA engineers, Brian Rexford and William Heaton, at Weissler's home. Weissler testified that he stressed that he wished to maintain the privacy of his home by limiting the number of trees cut. Weissler and Heaton eventually agreed to cut a four foot wide path from the southeast corner of Weissler's house to the road.

A work order was drawn up indicating the location of the line and specifying the dimensions of the clearance. The work order included a box designated "Clearing" with the notation "R2–4, 80 ft." MEA's right of way controller testified that that designation meant a four foot new clearance, 80 feet long. The four foot clearance would be two feet on each side of a center line.

MEA dispatched Ted Buzby and Robert Gaines to clear the path on Weissler's property. Buzby testified that according to the work sheet, the clearing was to be four feet wide, 80 feet long. Buzby and Gaines, however, did not follow the work order exactly. They cleared from the road to the *northeast* corner of the house and then saw the meter box on the *southeast* corner and decided to continue to clear to that corner. Buzby believed that Weissler wanted electrical service as soon as possible; he and Gaines both believed they were

---

**1.** AS 09.45.730 provides:

A person who cuts down, girdles, or otherwise injures or carries off a tree, timber, or shrub on the land of another person or on the street or highway in front of a person's house, ... without lawful authority, is liable to the owner of that land, ... for treble the amount of damages which may be assessed in a civil action. However, if the trespass was casual or involuntary, or the defendant had probable cause to believe that the land on which the trespass was committed was the defendant's own or that of the person in whose service or by whose direction the act was done, or where the timber was taken from unenclosed woodland for the purpose of repairing a public highway or bridge upon the land or adjoining it, only actual damages may be recovered.

helping Weissler by enlarging the clearance. Buzby testified that the path was staked to the *northeast* corner by the MEA engineer. Buzby further testified that the area he and Gaines cut could have been as wide as 21 feet and that they thus "overextended" themselves. Neither Buzby nor Gaines consulted with MEA or Weissler before widening the path beyond the work order. The cutting cleared approximately 1200 square feet. Weissler contends that it has destroyed the natural shield between his house and the road.

Weissler and Wadke jointly sued MEA for breach of contract and trespass. They also claim treble damages under AS 09.45.-730. Shortly after filing suit, Wadke and Weissler divorced and Wadke quitclaimed her interest in the property to Weissler as part of a property settlement. Following the divorce and the assignment of Wadke's interests in the lawsuit to Weissler, Weissler's attorney filed a motion requesting that Wadke be dropped as coplaintiff. Judge Ripley granted the motion and dismissed with prejudice any claims Wadke had against MEA.

Judge Beverly Cutler presided over a nonjury trial. At the close of trial, Judge Cutler made oral findings of fact and conclusions of law regarding the trespass and tree cutting. She took under advisement the issue of whether Weissler could recover for all the damage to the property.

After briefing by both parties on the issue of Wadke's assignment to Weissler, the superior court admitted an affidavit from Wadke attesting to her assignment. Judge Cutler then issued written findings of facts and conclusions of law. She found that Weissler granted MEA a four foot easement and that MEA cut a clearing more than four feet wide. She concluded that there was a trespass and damage. Judge Cutler also concluded that Weissler acquired all interests in the property by assignment. She found that Wadke had only been dismissed as a *named* plaintiff. She, therefore, allowed Weissler to recover for all the damage to the property.

The trial court chose, as the proper measure of damages, the cost of restoring the property to the approximate condition that existed before the cutting. Judge Cutler expressly rejected the replacement cost measure. She awarded compensatory damages in the amount of $5,250.00 ($4,050.00 restoration costs and $1,200.00 for maintenance). She then applied the treble damages provision of AS 09.45.730 and ultimately awarded $15,750.00. In the final judgment, Weissler additionally received costs of $842.38, attorney's fees of $2,208.93 and prejudgment interest of $6,339.35 for a total judgment of $25,-140.66.

## II. DISCUSSION

### A. *Applicability of AS 09.45.730 and the Treble Damages Award*

MEA contends that the superior court erred in applying AS 09.45.730 to this "simple breach of contract" action. Section 09.-45.730 [2] provides in part:

A person who cuts down, ... a tree, ... without lawful authority, is liable to the owner of that land, ... for treble the amount of damages which may be assessed in a civil action. However, if the trespass was casual ... or the defendant had probable cause ... only actual damages may be recovered.

MEA seeks to limit the scope of this statute in a number of ways. First, it argues that the statute's primary purpose is to deter those who pursue their own objectives on a public right of way from disregarding the adjacent landowner's interest. Second, MEA urges the court to apply common law principles governing the imposition of punitive damages to this statute. MEA additionally argues that the statute does not even apply because the scope of the easement granted by Weissler encompassed MEA's actions. Alternatively, MEA claims that the statute does not authorize treble damages for merely negligent conduct. It argues that negligence

**2.** *See also supra* note 1.

falls within the statutory exception that allows only single damages for "casual or involuntary" trespass. Finally, it claims it had probable cause to cut beyond the four foot boundary. We reject all of MEA's contentions. Its actions fall squarely within the scope of AS 09.45.730's treble damage provision.

### 1. *Purpose of the Statute*

MEA contends that "[t]he primary purpose of [this] statute is to protect the trees and vegetation on property near public rights-of-way from damage or destruction by those making use of the public right-of-way." It offers no support for this allegation and we find none in the statute or Alaska case law. In *Andersen v. Edwards*, 625 P.2d 282, 286 (Alaska 1981) (treble damages proper where state cut trees beyond those necessary for the construction of the roadway, even though the cutting was within the scope of the easement) we held "that only the amount of trees reasonably necessary to construct the roadway may be cleared." *Andersen* involved a 100 foot easement dedicated for use as a public roadway. *Id.* at 284–85. Nothing in the opinion, however, suggests that the statute only applies to such public right-of-way cases.

■ MEA's construction of the statute would allow the most willful of trespassers, *i.e.* those who enter onto timber land to cut and sell another's merchantable timber, to be liable for only single damages. We decline to limit the statute to the narrow confines suggested by MEA.

### 2. *The Penal Nature of AS 09.45.730*

■ MEA claims that common law standards governing punitive damages should apply to AS 09.45.730. Such standards require a showing of malice before a court may award punitive damages. *See e.g., Alaska Northern Development, Inc. v. Alyeska Pipeline Service Co.*, 666 P.2d 33, 41 (Alaska 1983). MEA relies on the section in *Andersen* in which we declined to allow prejudgment interest on the treble damages portion of the award because those damages were punitive. *Andersen*, 625 P.2d at 289. It reasons that because we characterized the treble damage provision as penal, common law punitive damages principles apply. Therefore, MEA argues that since Weissler did not show actual malice, punitive damages were improper.

Here, however, the court did not make a discretionary award of general punitive damages. Rather, it found that MEA trespassed and that the cutting of the trees bordered on recklessness. Section 09.45.-730 explicitly sets forth the rule and the exceptions for treble damages awards. It provides that:

> A person who cuts down ... a tree ... on the land of another ..., without lawful authority, *is liable* to the owner of that land ... *for treble the amount of damages....*

(Emphasis added).

■ The Oregon Supreme Court specifically addressed the scope of liability and punitive damages in 1889. That court construed the Oregon statutes [3] upon which AS 09.45.730 was modelled.[4] The court stated:

> The appellants' counsel insists that this statute is penal in its character, and does not apply to an unintentional trespass.... If said section 338 of the [Civ-

---

**3.** Former Oregon Civil Code §§ 338 and 339 read together are substantially the same as AS 09.45.730. As described by the Oregon Supreme Court, Section 338 provides

> that whenever any person shall cut down ... any tree ... on the land of another ... without lawful authority, in an action by such person ... against the person committing such trespasses ... if judgment be given for the plaintiff, it shall be given for treble the amount of damages....

Section 339 ... provides that if upon the trial of such action it shall appear that such trespass was casual or involuntary ... judgment shall be given for single damages. *Lowenburg v. Rosenthal,* 18 Or. 178, 22 P. 601, 604 (Or.1889).

**4.** *See* 8 Alaska Statutes, State of Origin Table at 10 (1984).

il] Code stood alone, the court would be called upon to construe it, and it might in that case adopt the construction contended for by the counsel; but we are spared that labor, as said section 339 ... points out the circumstances under which no more than single damages can be recovered. The legislature, by the latter section, has given a construction to the former one,—has prescribed the cases in which such trespasser shall be liable for single damages only,—*and leaves him in all other cases liable to treble damages, as prescribed in the former section....*

*Lowenburg v. Rosenthal,* 22 P. 601, 604 (Or.1889) (emphasis added). The Oregon construction is sensible. MEA must, therefore, show that it falls within the exceptions to the treble damages provision.

### 3. *Requirements of the Statute*

MEA is liable for treble damages if it trespassed without lawful authority, and the trespass was not casual or made with probable cause.

### a. *Trespass Without Lawful Authority*

MEA asserts that it did not trespass because it had Weissler's permission. It contends that the easement gave it authority to trim beyond the four foot path. The easement provided MEA with authority:

To inspect and make such repairs, changes, alterations, improvements, removals from, substitutions and additions to its facilities as the Association may from time to time deem advisable, including, by way of example and not by way of limitation, the right to increase or decrease the number of conduits, wires, cables, hand holes, manholes, connection boxes, transformers and transformer enclosures; to cut, trim and control the growth by chemical means, machinery or otherwise of trees and shrubbery located within ___ feet of the center line of said

line or system, or that may interfere with or threaten to endanger the operation and maintenance of said line or system (including any control of the growth of other vegetation in the right of way which may incidentally and necessarily result from the means of control employed)....

■ Weissler's consent to enter and cut trees extended only to the four foot easement. The trial court correctly concluded that MEA exceeded the scope of the consent by clearing beyond the four foot easement. According to the Restatement of Torts,

One whose presence on land is pursuant to a consent which is restricted to conduct of a certain sort, *is a trespasser* if he intentionally conducts himself in a different manner, as where one licensed to go on another's land and cut and remove trees not less than six inches in diameter cuts trees four and five inches in diameter.

Restatement (Second) of Torts § 168 comment d (1965) (emphasis added).[5] The Reporter's Notes to Section 169 [6] mention the "well-recognized rule that one who has a private easement of way becomes a trespasser when he goes beyond its boundaries." Restatement (Second) of Torts § 169 reporter's notes (1966).

A recent Washington case applying its timber trespass statute dealt with a situation analogous to the case at bar. That case discussed "whether the holder of a utility easement may be held liable for treble damages when the easement holder deviates from the location of that easement without first obtaining permission of the landowner and damages trees and shrubs." *Tatum v. R & R Cable,* 30 Wash.App. 580, 636 P.2d 508, 510 (1981). The defendant in that case contended it substantially complied with the easement because it chose a

---

5. Section 168 provides:

A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with.

6. Section 169 provides:

A consent given by a possessor of land to the actor's presence on part of the land does not create a privilege to enter or remain on any other part.

less expansive route and destroyed. fewer trees than it would have on the easement. *Id.*, 636 P.2d at 510–11. The trial court, however, found that "the path chosen by the [defendant] substantially deviate[d] from the easement, both in terms of its location and its width." *Id.* at 511. The trial court imposed treble damages upon the defendant and the appellate court upheld the verdict as supported by substantial evidence. *Id.* The appellate court noted that the defendant had neither obtained permission to vary from the easement nor made an effort to ascertain its location. *Id.* at 511. These two factors supported the verdict.

MEA claims that the scope of consent went beyond a mere four foot easement. However, the trial court concluded that while the written easement did not have "four feet" filled in, "Mr. Weissler clearly had an agreement with MEA that it was supposed to be four feet, and that when MEA cut further than four feet it was a trespass or a taking that wasn't done with consent." It is undisputed that MEA's employees did not seek permission from either MEA or Weissler to enlarge the cutting area.

In reviewing the trial court's findings of fact, we may only reverse if such findings are clearly erroneous. *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979). The trial court's findings here are not clearly erroneous. Mr. Weissler testified that he received assurances that the clearing would only be four feet. Buzby, MEA's employee, testified that the work order indicated a four foot clearing. Marilyn McRae Purcell, original owner of the land in question, testified that she accompanied Weissler to MEA after the clearing took place and spoke to an MEA employee.

That employee told Weissler that the clearing was only to be four feet, two feet on either side of a center line. Against this evidence MEA can only point to Buzby's· belief that they were doing the Weisslers a favor and MEA's belief that the easement authorized cutting such trees as MEA deemed advisable. MEA thus exceeded the scope of the easement Weissler granted. We therefore affirm the trial court's finding that MEA trespassed without lawful authority.

#### b. *Casual*

MEA asserts that any such trespass was casual[7] and hence only single damages should be awarded. We have not previously interpreted "casual" in the Alaska tree trespass statute. MEA contends that the trial court "found MEA's excessive cutting to be the result of negligence and mistake" and hence the court should have found the clearing to be "casual." MEA, however, mischaracterizes the trial court's findings. At the beginning of her oral findings, Judge Cutler did say that this was not a case where people were "recklessly cutting down other people's trees without regard for them." Nevertheless, the court later described MEA's conduct as negligence "verg[ing] on recklessness." In its written findings, the court concluded that "[t]he treble damages statute should apply because of the negligent and near reckless conduct of the [d]efendant."

MEA does not contest the finding of negligence. Rather it argues that negligence should be included in the definition of "casual," and hence exempted from the treble damages provision. We disagree. The phrase "casual or involuntary" comes directly from the tree trespass statute in New York's Field Code of 1848.[8] In the

---

7. MEA does not argue that it trespassed "involuntarily." Thus, we need not discuss "involuntary" as used in the statute.

8. Section 912 of the Field Code stated:
   If, upon the trial of such action, it appear[s], that the trespass was *casual or involuntary,* or that the defendant had probable cause to believe, that the land, on which the trespass was committed, was his own, or that of the person

in whose service, or by whose direction, the act was done, judgment must be given for only the single damages assessed in the action.
(Emphasis added). Earlier versions of New York's tree trespass statute limited liability for trespasses "casual *and* involuntary." *See, e.g.,* R.S. p. 3, ch. 5, t. 6, § 2 (1828).
   The Field Code served as the model for Oregon's initial tree trespass statute. *Compare* Act

mid-nineteenth century, "casual" meant "casualty." *See Viall v. Carpenter,* 82 Mass. (16 Gray) 285, 286 (Mass.1860) (discussing "casual and involuntary" as used in Massachusetts statute governing tender of amends in trespasses to land. *See* R.S. ch. 105, § 12 (1836), *codified as amended in* 41 Mass.Gen.Laws Ann. ch. 242, § 8 (West 1959)). Casualty, in turn, meant "accident or negligence" and contrasted with "designedly and under a claim of right." *Viall,* 82 Mass. at 286.[9]

■ At first blush, the common law definition of "casual" supports MEA's argument. Closer inspection of the statute and case law, however, reveals that the negligence signified by "casual" does not include a mistaken belief in the authority to cut trees. In *Viall,* the court noted that English common law distinguished trespasses committed under a mistaken belief in authority to enter from merely casual or involuntary trespasses:

> Under a similar statute in England ... it has been held that a trespass committed by mistake is not within the terms of the statute, because the act was voluntary. In such case, the entry on the land, being intended, was deemed not to be within the statute, although it might have been made under an erroneous impression as to the right of the tortfeasor in the premises. ... If a party enters on land *ex intentione,* the law holds him responsible for all the consequences of his acts, and treats him as a wrongdoer, if he fails to justify his entry. *It is only when by a casualty or without design he commits a trespass, that the law seeks to protect him....*

*Id.,* (citations omitted, initial emphasis in original, final emphasis added). Thus, a trespass committed under a negligently mistaken belief in the *right* to cut[10] would

not be "casual" since the trespasser intends to cut. Where the trespass is unintended, it is "casual."

For example, a bulldozer operator grading a road negligently swerves and plows down some trees. Since the operator had no intent to enter or cut the trees, the destruction occurred as a "casualty." The operator is liable for single damages only. Or, an excavator negligently sets off dynamite and injures trees. Since the excavator intended no destructive entry, the damage occurred as a "casualty." Or, a car careens negligently out of control and destroys a prize hedge. Again, the driver did not intend to enter the land or harm the hedge. In such examples, the defendants had no intent to enter or to cut the trees. "Casual" negligence thus means negligent conduct not involving an intent or design to enter or harm trees. "Casual" refers to whether the trespasser intended to cut, not the reason for an intended cutting.

■ Once a trespasser forms an intent to enter the land, the trespass becomes "willful" and the plaintiff may recover treble damages. *Iacobelli Construction v. Western Casualty and Surety,* 130 Mich. App. 255, 343 N.W.2d 517, 521 (1983) (construing "casual and involuntary" in Michigan's tree trespass statute).

■ MEA's negligent decision to exceed the scope of Weissler's permission to cut cannot qualify as "casual" negligence. MEA's agents intended to cut the trees under a mistaken belief that Weissler would approve. Since MEA's agents intended to cut, their actions were not "casual."

### c. *Probable Cause*

■ MEA further argues that it had probable cause to cut Weissler's trees.

of October 11, 1862, § 336, *codified in* 1 W. Hill, The Codes and General Laws of Oregon § 339 at 389 (1887). The Oregon statute served as Alaska's model. *See supra* notes 3 & 4.

**9.** This sense of "casualty" survives in names of insurance companies and the losses they cover.

**10.** Although *Viall* discusses trespassory *entries* onto land, it applies equally to trespassers who exceeded the scope of their lawful authority to enter and act. *See supra* notes 5 & 6 and accompanying text. Here, MEA had no authority to enter and cut on the portion of land exceeding the four foot wide easement.

The statute awards only single damages where

> the defendant had probable cause to believe that the land on which the trespass was committed was the defendant's own or that of the person in whose service or by whose direction the act was done....

AS 09.45.730.[11] Probable cause here means "an honest and reasonable belief." *Curlee v. Donaldson*, 233 S.W.2d 746, 754–55 (Mo.App.1950) (interpreting Missouri's tree trespass statute). By definition, a negligent mistake as to authority cannot qualify as probable cause since negligence involves unreasonable conduct.

■ Taken literally, the "probable cause" section would shield MEA from treble damages. Everyone involved honestly, reasonably and correctly believed that the *land* involved belonged to Weissler. "Probable cause" however, refers to authority to enter *and cut* on the property. Where a defendant honestly and reasonably believes that authority exists to cut the trees, a plaintiff recovers only single damages.

For example, suppose that a logger honestly, reasonably but mistakenly relies upon a boundary marker when cutting. The boundary marker actually sits a few feet onto the adjoining parcel. Since the logger has intended to cut up to the boundary, the tree destruction is willful and not negligent or casual. Absent the probable cause section, the adjoining owner arguably could recover treble damages even though the logger was innocently mistaken.[12] The probable cause section thus protects defendants who honestly and reasonably stray onto another owner's property.

The same construction should apply when a defendant has authority to be on only one portion of a person's property, but strays onto another. The probable cause section shields only those defendants who honestly and reasonably exceed the scope of the owner's permission to enter and cut on that owner's land. Without such a construction, a defendant could maliciously cut every tree on that owner's property and pay only single damages since the defendant believed the cutting occurred on that owner's land.

■ Here, MEA's negligence "verg[ing] on recklessness" negates any probable cause to cut the affected trees. MEA's negligence in believing it could cut the trees made its mistake unreasonable. The probable cause exclusion will not limit MEA's liability.

■ According to the proof sequence utilized by the Washington courts construing a similar statute, MEA had the burden of proof on the affirmative defenses of "casual" trespass or "probable cause." *Seattle First National Bank v. Brommers*, 89 Wash.2d 190, 570 P.2d 1035, 1039 (1977). *See also Longview Fibre v. Roberts*, 2 Wash.App. 480, 470 P.2d 222, 224 (1970). The Washington Supreme Court has stated:

> Once the plaintiff has proven trespass and the damages, the burden shifts to the defendant to show the trespass was casual or involuntary.

*Brommers*, 570 P.2d at 1039. Washington's approach is appropriate. It is similar to the burden of proof allocations we have used in mineral trespass cases. *See Alyeska Pipeline Service Co. v. Anderson*, 629 P.2d 512, 527 (Alaska 1981). The tree trespass statute mandates treble damages *unless* the trespasser exempts him or herself. This situation is also analogous to those in which a defendant bears the burden of proving an affirmative defense. MEA did not meet this burden. The evidence sustains the conclusion that MEA's cutting of trees in excess of the granted easement was not casual or the result of a reasonable mistake. Therefore, the trial court properly awarded treble damages.

B. *Wadke's Assignment of the Cause of Action to Weissler*

MEA argues that Weissler should not recover on the claims of his ex-wife Wadke

---

11. Like "casual or involuntary," the probable cause exclusion comes from the Field Code as adopted by Oregon. *See supra* note 8.

12. *But see Barnes v. Jones*, 51 Cal. 303, 305 (1876).

because those claims were dismissed with prejudice prior to trial. Wadke's pretrial affidavit ("first affidavit") stated: "I no longer desire to participate as a plaintiff in this matter and knowingly choose to forgo (sic) any possible recovery for past and/or future damages as a result of defendant's actions." The court issued an order prepared by MEA that stated:

IT IS HEREBY ORDERED that plaintiff Mary T. Wadke is dropped as a party plaintiff in this matter with leave to plaintiff Mark D. Weissler to serve and file an amended complaint.

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any and all claims of Mary T. Wadke against plaintiff (sic) are hereby dismissed with prejudice.[13]

MEA contends that Wadke's first affidavit and the subsequent order dismissing her as a plaintiff preclude Weissler from recovering for the total amount of damages to the property. Weissler maintained in his trial brief and in his testimony that Wadke had assigned her interests in the lawsuit to him.

Because of the conflict on this issue throughout the trial, Judge Cutler permitted post trial briefing. As part of that briefing Weissler submitted an affidavit signed by Wadke in Michigan ("second affidavit"). In this affidavit she stated she had orally assigned her interest in the cause of action prior to her dismissal as a party plaintiff. Weissler argues that the first affidavit and the dismissal order are ambiguous. Interpreting the dismissal order to preclude the preassigned interest in the property would, in Weissler's opinion, "be neither reasonable, effective, nor in harmony with the facts and law of the case."

In its objection to the trial court's consideration of Wadke's second affidavit, MEA contended that admission of the document deprived it of its right to cross-examine Wadke and claimed that such admission violated the hearsay rule. Weissler argued that admission of the document was permissible under Alaska Rule of Evidence 804(b)(5)[14] or alternatively Alaska Rule of Evidence 803(23).[15]

Judge Cutler, after the post trial briefing, issued an order allowing Wadke's affidavit to be entered as evidence pursuant to Alaska Rules of Evidence 803(23) and 804(b)(5). She found that the original affidavit in support of the motion to dismiss may literally provide support for MEA's contention that all Wadke's claims were dismissed with prejudice. Nevertheless, Judge Cutler stated that "it appears to have been drafted by counsel unwittingly as far as the import which [MEA] now attaches to it." She continued: "The court finds that ruling in favor of defendant would merely allow the ambiguities and peculiarities of legal drafting to foster results contrary to the parties' obvious intent."

On appeal the parties agree that "[j]udgments are to be given that interpretation which will render them reasonable, effec-

13. MEA moved at the close of trial for the correction of the clerical error, "defendant" should replace "plaintiff."

14. Evidence Rule 804(b) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

....

(5) *Other Exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable ef-

forts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

15. Evidence Rule 803 is virtually identical to Rule 804(b)(5) except that the declarant need not be unavailable.

tive, conclusive and in harmony with the facts and law of the case." *Pennington v. Employers Liability Assurance Corp.*, 520 P.2d 96, 97 (Alaska 1974) (Supreme Court reversed dismissal with prejudice of garnishment proceeding because "the judgment of dismissal is ambiguous." *Id.*). MEA relies on a policy favoring finality of judgments in arguing that the dismissal with prejudice should preclude admission of further evidence of assignment. *See, e.g., Pearson v. Bachner*, 503 P.2d 1401, 1402 (Alaska 1972) (rejecting untimely Rule 60(b)(6) motion for prejudgment interest filed two and a half years after judgment). Weissler maintained throughout the suit that he was claiming damage for the property as a whole and that Wadke had assigned her interests to him. His attorney signed an affidavit stating that he told MEA's counsel during settlement negotiations that MEA's offers were unsatisfactory because Weissler sought recovery on the total damage to the property.

■ On the record taken as a whole we agree with Weissler and Judge Cutler. Judge Cutler had the opportunity to observe the entire trial and judge the witnesses' demeanor and credibility. She deter-mined that Wadke assigned her interests to Weissler and that the parties intended merely to dismiss Wadke as a coplaintiff. We do not believe that Judge Cutler's determination was clearly erroneous.[16] Nor was her admission of the second affidavit in error.[17]

### C. Prejudgment Interest on the Treble Damages Award

■ MEA argues that the trial court erred by awarding Weissler prejudgment interest on the punitive portion of the treble damages award. We agree. In *Andersen*, we held that prejudgment interest may be awarded on the compensatory portion but not on the punitive portion of the award. 625 P.2d at 289–90. We remand the case for computation of prejudgment interest solely on the compensatory award.

### D. Award of Costs and Attorney's Fees

■ Civil Rule 79(a)[18] requires the party entitled to costs to serve on the other parties a bill and "a notice of the date and time of the cost bill hearing at which the clerk will tax costs." Rule 79(c)(1)[19] pro-

---

16. MEA also asserts that it detrimentally relied on the dismissal with prejudice. It asserts that it would have taken greater efforts to find and depose Wadke if it had known the court would allow Weissler full recovery. Since Weissler alleged throughout the trial that he was pursuing a full recovery, and MEA continued to oppose the inclusion of such claims, MEA's contention is specious.

17. Judge Cutler's order stated:
   The court allows Mary T. Wadke's affidavit to be entered as evidence under Alaska Rules of Evidence 804(b)(5) and 803(23). It appears that the affiant is unable to be located for live testimony, and that a substantial guarantee of trustworthiness lies in the fact that the witness has no motive to testify favorably to plaintiff, and in fact appears to dislike plaintiff. The statement also corroborates other testimony.
   On the record before us, we find no error in Judge Cutler's ruling.

18. Civil Rule 79(a) provides:
   Within 10 days after the date shown in the clerk's certificate of distribution on the judgment, a party entitled to costs shall serve on each of the other parties to the action or proceeding a cost bill, together with a notice of the date and time of the cost bill hearing at which the clerk will tax costs. The date and time of the hearing shall be scheduled with the clerk's office and shall be not less than 3 nor more than 7 days from the date of the notice. The cost bill shall distinctly set forth each item claimed in order that the nature of the charge can be readily understood. It shall be verified by the oath of the party, or his agent or attorney or of the clerk of such attorney, stating that the items are correct, that the services have been actually and necessarily performed, and that the disbursements have been necessarily incurred in the action or proceeding. Failure of a party to serve a cost bill and notice as required by this subdivision shall be construed as a waiver of his right to recover costs.

19. Civil Rule 79(c)(1) provides:
   At the time specified in the notice, any party may present his objections to the cost bill, either orally or in writing. He shall specify each item to which objection is made and the ground of the objection. The parties may file affidavits or other documentary evidence to support their respective positions.

vides that the opposing party may present oral or written objections to the bill at the time for the hearing.

Following the trial, Weissler filed an itemized bill for costs and attorney's fees and a notice of application for costs and fees. Weissler attached a notice of taxation of costs, without the date or time for a hearing filled in. In its final judgment, the trial court granted Weissler his entire request for costs and a slightly reduced attorney's fees award. At no time prior or subsequent to the judgment was a notice of hearing pursuant to Rule 79 served on MEA. MEA alleges that the superior court's action deprived MEA of the hearing and therefore the case must be remanded for such a hearing. We agree.

This court's decision in *Isaacson Structural Steel v. Armco Steel,* 640 P.2d 812 (Alaska 1982), addresses Rule 79 and the scope of the trial court's discretion in awarding costs. In that case the prevailing party filed its notice of costs at the time of judgment without a notice of hearing. We found that the trial court's decision to remove the cost determination from the province of the clerk had "the effect of completely depriving [the] party of the opportunity to object to specific items taxed as costs." *Id.* at 815. We held that "the superior court's simultaneous entry of judgment and the award of costs was error." *Id.* (footnote omitted). The *Isaacson* reasoning requires that this issue be remanded for a cost hearing pursuant to Rule 79.

### III. CONCLUSION

We affirm the trial court's award of treble damages for the clearing of trees outside the four foot easement granted. MEA trespassed without lawful authority within the meaning of the statute and the trespass was not casual. We additionally affirm the trial court's admission of Wadke's affidavit and the award of total damages to Weissler.

We reverse the award of prejudgment interest on the treble damages award and remand for a determination of interest on the compensatory portion only. We vacate the award of costs. MEA has the opportunity on remand to contest the itemization of costs made by Weissler at a hearing pursuant to Rule 79.

AFFIRMED IN PART, REVERSED AND REMANDED in part for proceedings consistent with this opinion.