Ester OSBORNE and Harriet Christensen, Appellants/Cross–Appellees,

v.

Harley HURST, Appellee/Cross–Appellant.

Nos. S–7205, S–7235.

Supreme Court of Alaska.

Nov. 14, 1997.

C. Michael Hough, Homer, for Appellants/Cross–Appellees.

Marc D. Bond, Delaney, Wiles, Hayes, Gerety & Ellis, Inc., Anchorage, for Appellee/Cross–Appellant Harley Hurst.

Before COMPTON, C.J., and MATTHEWS, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Two property owners sued a neighbor for setting a fire that burned down the trees on their property. The trial concluded in a jury verdict and judgment in favor of the defendant. Both sides appeal various decisions of the trial court concerning summary judgment, admission of testimony, and attorney's fees. We reverse and remand.

## II. FACTS AND PROCEEDINGS

In 1985 Ester Osborne and Harriet Christensen purchased, for $40,000, a 3.62 acre plot of land with a cabin on it. The plot, on a point near Homer, overlooked Kachemak Bay. About twenty percent of the land was forested. Osborne and Christensen live in Washington. They held the land as a vacation spot for themselves and relatives, as an investment, as a rental property, and for their retirement. They called it "a playground, a retirement home, a place of peace."

In 1991 a neighbor, Harley Hurst, set a grass fire that grew as the wind caught it and spread out of control. The fire burned down Osborne and Christensen's cabin. It killed or severely damaged all the trees on their property.

The cabin was insured, and the insurer reimbursed Osborne and Christensen for $22,903.69, the value of the cabin less the policy's $250 deductible. The insurer concluded that the loss was attributable to Hurst's negligence and sought compensation from him for the cost.

Osborne and Christensen sued Hurst for the property damage not covered by their insurance. Hurst admitted liability for compensatory damages and offered Osborne and Christensen $18,600, plus interest, attorney's fees under Alaska Civil Rule 82, and costs to settle their suit. Osborne and Christensen apparently declined his offer.

Osborne and Christensen requested treble damages, seeking to apply the law that provides punitive treble damages if a trespasser intentionally removes trees from the property of another. AS 09.45.730. The superior court granted Hurst's motion for summary judgment on this issue, holding that the treble damages provision was inapplicable because Hurst destroyed the trees unintentionally.

To measure damages, Osborne and Christensen retained John Hall of Taiga Resource Consultants. Hall stated that the cost of restoring the property to its original condition by replacing the burned trees with healthy ones would be $170,074.43. He noted that the larger trees on the property would be replaced by the "largest available transplantable size."

Hurst's expert, a real estate appraiser, stated that the fire diminished the fair market value of the property, excluding the cabin, from approximately $32,000 to approximately $21,000. This $11,000 reduction in the value of the property consisted of $4000 in removal costs to clear the dead trees and debris, approximately $4000 in "holding costs," defined as the opportunity cost of waiting a year after the fire for ground vegetation to regrow before selling, and a $3000 decrease in the value of the land due to the loss of its trees.

Because the parties proposed standards that would have produced very different results, Hurst moved for summary judgment on the issue of the measure of damages. The superior court granted Hurst's motion. The court concluded that restoration costs were "so disproportionate to the decrease in

value" that restoration costs were an inappropriate measure of Osborne and Christensen's damages.

At trial, Hurst objected to Osborne's and Christensen's testimony about the value of their property, on grounds that they were not qualified to give such testimony. The court permitted the property owners to testify.

Osborne and Christensen called Karen Berg–Forrester, a Homer real estate broker, to testify to the property's value. Hurst objected because Berg–Forrester was not identified as an expert witness until after the trial had begun and because she was a realtor instead of a qualified real estate appraiser. After an offer of proof, the court permitted Berg–Forrester to testify. Berg–Forrester testified that the pre-fire value of the property without the cabin was between $32,000 and $39,500 and that the value fell to between $22,000 and $24,000 immediately after the fire.

The case was tried before a jury. Instructions required the jury to calculate damages suffered by Osborne and Christensen according to the diminution in the property's value excluding the loss of the cabin. The jury found damages to be zero.

Because Osborne and Christensen did not recover a money judgment, the trial court applied Alaska Civil Rule 82 and awarded Hurst attorney's fees. However, the court adjusted downward from the Rule 82 scheduled amount and awarded Hurst $12,500 of his $65,846.50 in attorney's fees. It used an adjusted amount because it found that "the issues in this case were not very complex, ... the trial was short, and ... a large fee award ... would be so onerous to Plaintiffs that it would deter similarly situated litigants from voluntarily pursuing valid claims in court."

Both sides appeal. Osborne and Christensen claim that the trial court erred in granting summary judgment in favor of Hurst on the issues of treble damages and restoration costs. On cross-appeal, Hurst claims that the trial court erred by admitting certain valuation testimony by Osborne, Christensen, and Berg–Forrester and by reducing the attorney's fee award to an amount lower than the scheduled fee in Rule 82.

## III.  DISCUSSION

### A.  Standard of Review.

This court "will uphold summary judgment only if the record presents no genuine issues of material fact and 'the moving party was entitled to judgment on the law applicable to the established facts.' When the court makes this determination, '[a]ll reasonable inferences must be drawn ... in favor of the non-moving party.' " *Bishop v. Municipality of Anchorage,* 899 P.2d 149, 153 (Alaska 1995) (quoting *Newton v. Magill,* 872 P.2d 1213, 1215 (Alaska 1994)).

We review rulings concerning the admissibility of opinion testimony under the abuse of discretion standard. *See Schymanski v. Conventz,* 674 P.2d 281, 286–87 (Alaska 1983). We also review rulings concerning a witness's qualifications as an expert under the abuse of discretion standard. *See Handley v. State,* 615 P.2d 627, 630 (Alaska 1980). Finally, we review attorney's fee awards under the abuse of discretion standard. *See Kelly v. Kelly,* 926 P.2d 1168, 1170 (Alaska 1996).

### B.  The Superior Court Erred in Granting Summary Judgment on the Issue of Restoration Costs.

The superior court granted summary judgment in favor of Hurst on the issue of restoration costs. Thus, it precluded Osborne and Christensen from arguing that their damages were equal to the cost of restoring the property to its original condition by replacing the trees that Hurst destroyed. Osborne and Christensen argue that the superior court erred. We agree.

We have recognized that "a plaintiff who has been injured by an invasion of his land not totally destroying its value may elect as damages either the loss in value" or reasonable restoration costs. *G & A Contractors, Inc. v. Alaska Greenhouses, Inc.,* 517 P.2d 1379, 1385 (Alaska 1974). To determine when awarding restoration costs is appropriate, we have embraced the test set forth in Restatement (Second) of Torts § 929 (1977).

*See Andersen v. Edwards,* 625 P.2d 282, 288 (Alaska 1981).

The Restatement provides in part:

(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred[.]

Restatement (Second) of Torts § 929(1)(a) (1977). Comment b explains:

[T]he reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery.... If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm.

In this case, the superior court found that using reasonable restoration costs was an inappropriate measure of damages because "[t]he amount of restoration costs is so disproportionate to the decrease in value caused by the burning of the trees." As the Restatement provides, disproportionately large restoration costs do not necessarily prohibit a party from successfully seeking reasonable restoration costs as the measure of damages. *Id.* Instead, the Restatement indicates that reasonable restoration costs are an inappropriate measure of damages when those costs are disproportionately larger than the diminution in the value of the land *and* there is no "reason personal to the owner for restoring" the land to its original condition. *Id.* We previously interpreted "reason personal" to mean peculiar or special to the owner. *See Andersen,* 625 P.2d at 288. We explained that the plaintiff in *G & A Contractors* had a "reason personal" justifying reasonable restoration damages because its use of the damaged property as "a showplace in connection with its nursery business" was a purpose "peculiar" to the plaintiff. *Andersen,* 625 P.2d at 288.

Other authorities determine whether a "reason personal" exists by examining a landowner's motivation for holding the land. If the landowner's principal reason for holding the land is to sell it for profit, Professor Dobbs suggests that awarding restoration damages would confer a windfall upon the landowner. *See* 1 Dan B. Dobbs, *Law of Remedies* § 5.2(1), at 714–15 (2d ed.1993). In such cases, damages equal to the diminished value of the property usually will fully compensate the injured landowner. *See id.* § 5.2(1), at 713 ("The diminution measure permits the plaintiff to recover the difference between the reasonable sale value of the property immediately before the harm was done and the value immediately afterward.").

In contrast, courts have recognized that landowners should not be forced either to sell property they wish to keep or to make repairs partly out of their own pockets. *See, e.g., Roman Catholic Church of the Archdiocese of New Orleans v. Louisiana Gas Serv. Co.,* 618 So.2d 874, 877 (La.1993). As the *Louisiana Gas* court observed: "If the plaintiff wishes to use the damaged property, not sell it, repair or restoration at the expense of the defendant is the only remedy that affords full compensation." *Id.* Thus, a reason personal to the owner for restoring the original condition exists where the owner holds property primarily for use rather than for sale and where the owner is likely to make repairs with the restoration costs award rather than to pocket the funds and enjoy a windfall.

Professor Dobbs notes that applying the Restatement's "reason personal" rule may be difficult in some cases. *See* Dobbs, *Law of Remedies supra,* § 5.2(2), at 719. Indeed, no rule "appears to govern all cases with complete success." *Id.* We agree with Professor Dobbs that there is "no substitute for practical good sense" in distinguishing the situations when a property owner will actually face the choice recognized in *Louisiana Gas* from those situations when the property owner will experience a windfall. *See id.* § 5.2(2), at 720.

The need for "practical good sense" exists at two levels. First, the plaintiff's "reason personal" must itself be objectively reasonable. Second, once a "reason personal" is found, restoration costs exceeding diminished market value may be awarded only to the extent such added costs are objectively reasonable in light of the "reason personal" and in light of the diminution in value. Thus, the Restatement rule permits an injured landowner to recover "at his election in an appropriate case, the cost of restoration that has been or may be *reasonably* incurred." Restatement (Second) of Torts § 929(1)(a) (1977) (emphasis added). The purpose for limiting an award to those costs that have been or may be reasonably incurred appears to be a desire to reduce the economic waste that occurs when a party incurs repair costs in excess of the diminished value of the property. *Cf.* Dobbs, *Law of Remedies supra,* § 5.2(1), at 715 (observing that making expensive repairs in excess of the property's diminished value maximizes the loss and "seem[s] uncomfortably like economic waste").

Under the foregoing principles, Osborne and Christensen were entitled to elect as their preferred measure of damages restoration costs instead of diminished market value; but if restoration costs were disproportionate in relation to the diminution in market value, Osborne and Christensen were further required to prove the existence of a case-specific justification, or "reason personal" for their chosen measure of damages. If that justification was objectively reasonable, it would support an award of restoration costs exceeding diminished value, but only to the extent the added costs were themselves objectively reasonable in light of the established reason personal[1] and the diminution in market value.

In granting summary judgment to Hurst on the measure of damages issue, the trial court did not fully apply these principles. The record suggests that the superior court did not consider whether a "reason personal to the owner for restoring the original condi-

tion" existed. Restatement (Second) of Torts § 929 cmt. b (1977). Instead, the court evidently decided to require Osborne and Christensen to rely on diminished value simply because restoration costs were disproportionately higher.

The record unquestionably showed that restoration costs were disproportionately higher than diminished market value: Osborne and Christensen sought restoration costs of $170,000, whereas experts for both parties agreed that the pre-fire value of the land, excluding the cabin, was less than $40,-000. Given this evidence, Osborne and Christensen plainly bore the burden of justifying their choice of restoration costs by adducing evidence of a "reason personal."

The superior court could properly grant summary judgment on this issue, but only in the absence of evidence raising a genuine issue of fact as to the existence of a "reason personal." Yet the record before the superior court when it granted summary judgment did contain evidence indicating a potentially valid "reason personal."

Christensen testified in a deposition that she and Osborne had selected the property because of its unique views, its abundant trees, and the unusual juxtaposition of the trees, the cabin, and the views. Christensen claimed that other properties in the area were not comparable. As previously mentioned, Christensen and Osborne planned to use the property for their retirement. This evidence, if accepted, might have supported the finding of a "reason personal" justifying an award of at least some replacement costs in excess of market value. The issues of whether replacement costs should be awarded and the extent to which such costs might have been reasonable should properly have been left for the jury.

Because these issues were not suitable for disposition by summary judgment, the superior court erred in precluding the jury from determining the appropriate measure of damages in accordance with the "reason personal" test. The error requires a remand for a retrial.

---

**1.** For example, a jury might find that the unique setting of the land in this case was a valid "reason personal" justifying *some* restoration costs in excess of diminished market value, but that expenditure of the full estimated cost of $170,000 would not be reasonable.

## C. The Superior Court Did Not Err in Granting Summary Judgment on the Issue of Treble Damages.

The superior court granted summary judgment in favor of Hurst by finding that the treble damages provisions of AS 09.45.730 did not apply to this case. That statute provides treble damages against a person who "injures or removes a tree, timber or a shrub" from the land of another. AS 09.45.730. However, the provision does not apply "if the trespass was unintentional or involuntary." *Id.*

The superior court concluded that AS 09.45.730 did not entitle Osborne and Christensen to treble damages by reasoning "there is no question of fact concerning the intent of Mr. Hurst in starting the fire. The spread of the fire to plaintiffs' property was unintended and accidental." On appeal, Osborne and Christensen contend that the superior court erred in granting summary judgment in favor of Hurst because a disputed issue of material fact remains about whether Hurst's conduct was "unintentional" within the meaning of AS 09.45.730. Specifically, they concede that Hurst did not burn their trees "with the intention as an arsonist would have in setting a fire." Nevertheless, they argue that AS 09.45.730 also punishes reckless conduct and that "Mr. Hurst showed utter and reckless disregard for the rights and property of Christensen/Osborne and Mr. Hurst's other neighbors."

Before 1988, the exception to AS 09.45.730 read "if the trespass was casual or involuntary." Ch. 85, § 16, SLA 1988. We interpreted this pre-amendment language in *Matanuska Electric Association v. Weissler*, 723 P.2d 600, 606–07 (Alaska 1986). We recognized that "casual" was derived from a nineteenth century statute and that it meant unintentional. *Id.* We concluded that "casual" refers to "whether the trespasser intended" to cut, damage, or remove trees. *Id.* at 607.

The 1988 amendment to 09.45.730 replaced "casual" with "unintentional." *See* 1988 House & Senate Joint Journal Supp. No. 18, at 4. The amendment's legislative history refers to the *Weissler* court's construction of "casual" to mean "unintentional." *Id.* It

also specifically notes that "[t]he amendment is suggested to update the language in conformity with the court's construction." *Id.* Thus, we conclude that the holding of *Weissler* remains undisturbed.

In light of our interpretation of AS 09.45.730 in *Weissler*, we conclude that the superior court did not err in granting summary judgment in favor of Hurst on the issue of treble damages. When the court was considering the summary judgment motion, the parties agreed that Hurst did not specifically intend to burn the trees on Osborne's and Christensen's property. Nothing in the language of the statute, its legislative history, or our decision in *Weissler* indicates that the legislature intended to apply treble damages where a party negligently or recklessly damages trees if that party did not specifically intend to do so.

## D. Osborne's and Christensen's Property Value Testimony was Admissible.

Hurst contends that Osborne and Christensen should not have been permitted to testify about the value of their property before and after the fire. He argues that, beyond the actual purchase of the land, they had no "basis upon which either of them could offer an opinion regarding its value." "In Alaska, lay testimony offered by the landowner as to property value is admissible because of the owner's presumed knowledge about the value of such property." *Schymanski v. Conventz*, 674 P.2d 281, 286 (Alaska 1983). Evidence of the owner's familiarity with the property is relevant to the weight that the trier of fact should give to the testimony. *See* John Henry Wigmore, 1A *Evidence in Trials at Common Law* § 29, at 976 (Tillers rev. 1983) ("It is for the jury to give the fact the appropriate weight in effecting persuasion. The rule of law the judge employs is concerned merely with admitting the fact through the evidentiary portal."). Therefore, we conclude that the superior court did not abuse its discretion.

## E. The Superior Court Did Not Abuse Its Discretion in Admitting Berg–Forrester's Expert Testimony.

Hurst argues that Berg–Forrester's expert testimony was improperly admitted. He as-

serts that she was not qualified as an expert and that her identity was disclosed late. We disagree.

■ As to Hurst's first argument, "[t]he true criterion [for determining whether a person qualifies as an expert witness] is whether the jury can receive appreciable help from this particular person on this particular subject." *Crawford v. Rogers*, 406 P.2d 189, 192 (Alaska 1965). Berg–Forrester indicated that she has been a real estate agent in Homer for the past eighteen years and that she is a certified residential specialist and a certified residential broker. She testified that she was familiar with the subdivision within which Osborne's and Christensen's lot is situated, had sold properties within the subdivision, and had visited the property before and after the fire. She also explained that her job requires her to be familiar with the value of real property and that she is frequently asked to give "a fair market value or a fair estimation value" of property. Under these circumstances, the superior court did not abuse its discretion in qualifying Berg–Forrester as an expert.[2]

■ We also determine that it was within the superior court's discretion to admit Berg–Forrester's testimony, even though Berg–Forrester was not identified as an expert until the time of trial. Hurst correctly concedes that the superior court has substantial discretion in dealing with late-disclosed witnesses. *See Lewis v. Lewis*, 785 P.2d 550, 557 (Alaska 1990). Exercising this discretion, the court required Osborne and Christensen to make an offer of proof on the record regarding Berg–Forrester's proposed testimony so that Hurst and his expert would

have the opportunity to review the basis of her opinion before she testified in front of the jury.

We conclude that the superior court employed appropriate measures under the circumstances to minimize any prejudice to Hurst. Moreover, if any prejudice did occur, it does not appear to have harmed Hurst. Hurst's expert stated that the fire diminished the fair market value of the property, excluding the cabin, from $32,000 to $21,000. Berg–Forrester testified that the pre-fire value without the cabin was between $32,000 and $39,500 and that the post-fire value was between $22,000 and $24,000. Neither of these opinions appears to have formed the basis for the jury's conclusion that Hurst was not liable for any damages. Therefore, any prejudice that occurred was harmless.[3]

## IV. CONCLUSION

We conclude that the superior court erred in granting summary judgment in favor of Hurst as to the measure of damages. On remand, the court should conduct proceedings to determine whether Osborne and Christensen have a "reason personal" for restoring the property to its pre-fire condition. Should the jury find that Osborne and Christensen have a "reason personal," Osborne and Christensen may elect to use reasonable restoration costs as the measure of damages. The superior court should reexamine its attorney's fees award in light of these additional proceedings.

Finally, we conclude that the superior court did not err in granting summary judg-

---

2. Hurst points out that Berg–Forrester had no training as a real estate appraiser and asserts that she used unsound techniques to assess the value of the property. Such evidence is appropriate for cross-examination and is relevant to the credibility and weight the trier of fact should give to the testimony.

3. Hurst also challenges the superior court's decision to award him attorney's fees in an amount less than the scheduled fee in Alaska Civil Rule 82(b)(2). In particular, he argues that the superior court erred in reducing the attorney's fee award because it did not explain its analysis of all the possible reasons, under Rule 82(b)(3), for

deviating from the schedule set forth in Rule 82(b)(2). We disagree. If one or more Rule 82(b)(3) factors justifies departure from the schedule for fee awards, the trial court may base its decision on those factors, without specifically explaining why the other factors are not relevant. Nevertheless, we conclude that the superior court must reexamine the attorney's fee award. The superior court based its reduced award in part upon the short duration of the trial and the lack of complexity of the issues. On remand, the duration and complexity of this case may change. Accordingly, the superior court may need to adjust its fee award.

ment in favor of Hurst on the issue of treble damages.

EASTAUGH, J., not participating.