CARPENETI, Justice,
with whom WINFREE, Justice, joins, concurring in part and dissenting in part.
I agree with all of the conclusions reached in today's opinion but one. The opinion decides, without explicitly so holding, that the superior court's error in denying the Wier-sums' JNOV motion extended only to the amount of restoration damages awarded. But I believe that this error did more: It fatally infected the jury's finding that Harder had a "reason personal" that would justify the use of restoration damages at all, rather than diminution damages, in a case such as this where restoration damages are disproportionate to diminution in value. For this reason, I would reverse the judgment and remand for retrial on all damages issues, including whether restoration damages are appropriate.
Today's opinion concludes that the superi- or court erred in allowing Harder to introduce a purported contract with the jurors. The contract promised that Harder would spend all restoration damages to restore his property. The opinion also finds error in the superior court allowing Harder to offer the jury the option to revise the contract in any way that it saw fit and in promising that he would comply with the document as revised. I agree with the court's conclusion that admission of this evidence was error.
But I disagree with the unstated conclusion that the only effect of this error was to require a retrial on the amount of restoration damages. The admission of this evidence throws doubt on the jury's conclusion that restoration damages are appropriate at all. I disagree with today's opinion because under our law concerning the use of restoration damages it is clear that the admission of this evidence appreciably affected the jury's verdict and therefore affected the substantial rights of the Wiersums.
Admission of the evidence was error.
Harder was successful in obtaining the admission, over the Wiersums' objections, of a purported contract which read as follows:
I Paul Harder do hereby solemnly swear, at the risk of being prosecuted for fraud, to replant a minimum of 70 Sitka spruce trees and no less than 6500 square feet of understory on Lot 1A block 8 Monashka bay subdivision, if awarded restoration damages from the Harder versus Wier-sum|[ Js law suit. I Paul Harder agree to use all those restoration damages solely for restoration and to plant the largest trees that the award will afford.... Paul *574 Harder agrees that restoration damages shall be held in an escrow trust by his attorney Jill Wittenbrader and doled out as needed to complete the job.
The document, characterized by Harder's attorney as "a contract to the jurors," was signed by Harder and notarized. During his testimony, Harder read the "contract" to the jury and then testified about it "And I would like to add that if the jury is not cool with this document, you can write anything you want for me. I'll do it. I want to plant the trees back and I want you to know that I [will]."
Today's opinion by the court correctly concludes that admission of this evidence was error, for at least two reasons. First, Harder's tactic was "unprecedented" and "allowing this evidence was improper and 'fundamentally unfair'" because the "one-sided promise with the jury was not legally enforceable." Second, by suggesting that the jury could legally modify the contract in any way that it wanted, "Harder intimated that the jurors had some control over the terms of the purported agreement, which they did not."
Admission of the evidence appreciably affected the verdict.
But the court's opinion does not go far enough in assessing the harm caused by admission of this evidence. The jury's task, after finding liability, was to determine whether the measure of damages would be diminution in value of the land or the reasonable cost of restoration of the land.[1] Restoration damages that are disproportionate to the diminution in value[2] can be awarded only if the owner has a reason personal that would justify the higher award (and if the amount of restoration costs is not unreasonably disproportionate to the diminution in value).[3]
Jury Instruction No. 16, which no party has challenged and which correctly stated the law, provided that in determining "whether there is a 'reason personal' to Mr. Harder for restoring the property, you may consider the nature of the property, how it was used, the likelihood that he would actually restore it, or any other factors you think are important." (Emphasis added.) The challenged evidence-both the language of the "contract" with the jury that was admitted into evidence and Harder's testimony embellishing the contract, allegedly enforceable by a prosecution for fraud were he to fail to use an award only for restoration-would have looked to a jury like an ironclad guarantee binding Harder to use any award for restoration. Thus, on the critical issue of whether Harder had a reason personal for obtaining restoration costs, on one of only three factors it was instructed to consider the jury was erroneously provided apparently rock-solid evidence on which to rely in making that determination.
In deciding whether the erroneous admission of evidence will support reversal of a verdiet, we look to whether the error "substantially affect{ed] the verdict," [4] "appreciably affected] the jury's verdict," [5] or "affected the substantial rights of a party."[6] I believe it to be beyond argument that admission of the "contract" and Harder's testimony regarding the "contract" meets this standard in all of its manifestations. A jury faced with determining whether Harder had a reason personal and looking to the standards of *575 Instruction No. 16-and particularly "the likelihood that [Harder] would actually restore [the property]l'-would have placed great weight on the "contract" and related evidence. But the evidence should not have been admitted. In these cireumstances, I conclude that this erroneous admission of evidence affected the substantial rights of the Wiersums. I would reverse on that basis and remand for a new trial on damages, including whether Harder had established a reason personal justifying the use of restoration costs as the measure of damages.
WINFREE, Justice, concurring in part and dissenting in part.

. Osborne v. Hurst, 947 P.2d 1356, 1359 (Alaska 1997).

. The evidence at trial regarding restoration damages ranged from about $34,000 to over $600,000. The evidence at trial regarding diminution in value of the land suggested that the market value of the land before the trees were cut and after remained the same. The superior court found that the borough property tax assessment for the lot was the same before and after the trees were cut.

. Osborne, 947 P.2d at 1359 (citing Restatement (SEconp) or Torts § 929(1)(a) emt. b (1977)).

. Beech Aircraft Corp. v. Harvey, 558 P.2d 879, 886-87 (Alaska 1976).

. Municipality of Anchorage v. Devon, 124 P.3d 424, 432 n. 28 (Alaska 2005) (quoting Wyatt v. State, 981 P.2d 109, 115 (Alaska 1999) (quoting Love v. State, 457 P.2d 622, 631-32 (Alaska 1969))).

. Barton v. N. Slope Borough Sch. Dist., 268 P.3d 346, 349 (Alaska 2012) (quoting Cartee v. Cartee, 239 P.3d 707, 721 (Alaska 2010)).