WINFREE, Justice,
concurring in part and dissenting in part.
I agree that the judgment in this case must be reversed, but for the reasons expressed by Justice Carpeneti in his concurring opinion; I otherwise agree with the per curiam opinion. I write separately to note that the parties apparently agree that the treble damages provision of AS 09.45.7830 applies to restoration damages and to acknowledge that Chief Justice Fabe's concurring opinion raises an important concern about the upper limits of restoration damages. But the latter issue was not raised in the superior court or on appeal. Absent appropriate briefing on this legal issue, I prefer that the parties raise it in the superior court on remand.
STOWERS, Justice, with whom MAASSEN, Justice, joins, concurring in part and dissenting in part.
STOWERS, Justice,
with whom MAASSEN, Justice, joins, concurring in part and dissenting in part.
Although I agree with most of the court's opinion, I respectfully disagree with its decision to vacate the jury's restoration damages award and order a new trial on damages. By vacating the jury's damages award, the court today intrudes into the jury's role as factfin-der and impermissibly substitutes its own judgment for that of the jury.
We have long recognized the fundamental role juries play in our legal system. Juries are the voice of reason, conscience, and community, and we trust them to make difficult decisions touching upon life and death. It is the jury's responsibility to "make the difficult and uniquely human judgments that defy codification and that build discretion, equity, and flexibility into a legal system." [1] We the court are obligated to respect these judgments. In the words of the United States Supreme Court, "In no case is it permissible for the court to substitute itself for the jury, and compel a compliance on the part of the latter with its own view of the facts in evidence, as the standard and measure of that justice, which the jury itself is the appointed constitutional tribunal to award."[2]
Our standards of review reflect the deference and respect with which we treat jury verdicts. It is well established that "[ojur role in reviewing a grant of a [JNOV] motion . is not to weigh conflicting evidence or judge the credibility of witnesses, but rather to determine whether the evidence, when viewed in light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment."[3] This test is objective,[4] and a JNOV motion must "be serutinized under a principle of minimum intrusion into the right to jury trial guaranteed under the Alaska Constitution." [5] "[If there is room for diversity of opinion among reasonable people, the question is one *576 for the jury." [6]
The Restatement (Second) of Torts provides:
[T]he reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery.... If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm.[7]
We expanded upon this requirement in Osborne v. Hurst, where we held that a party may recover restoration costs disproportionate to the diminution in market value so long as that party can also prove an objectively reasonable reason personal and the added costs are objectively reasonable in light of the established reason personal and the diminution in market value.[8] In reversing the superior court's grant of summary judgment, we further noted that "[the issues of whether replacement costs should be awarded and the extent to which such costs might have been reasonable should properly have been left for the jury."[9]
Here, the superior court properly left these factual questions to the jury's discretion, yet the court today reverses the jury's restoration damages award. In justifying this reversal, the court notes that the jury "was required to base its restoration award on a finding that the restoration costs were objectively reasonable in light of the value of Harder's land, the diminution of its value, and his reason personal." But the jury did exactly that here. It is undisputed that the jury was properly instructed on Osborne: the jury instructions expressly provided that the jury could not find that Harder was entitled to restoration damages unless it also found that "the cost of restoring the property is not disproportionate to the loss in property value caused by the trespass or, if it is disproportionate, that there is a 'reason personal to Mr. Harder for restoring the property to its original condition.'"[10] The instructions further provided that "(once a 'reason personal' is found, restoration costs exceeding diminished market value may be awarded only to the extent that such added costs are objectively reasonable in light of the 'reason personal' and in light of the diminished market value." Accordingly, the jury found that although the market value of the trees was only $3,520, there was a reason personal that justified an award of $161,000. There is no indication in the record that the jury disregarded the jury instructions in arriving at these figures, and it was reasonable for the jury to conclude that Harder was entitled to compensation for the loss of the trees and damage to his property; that there was a "reason personal" to Harder for restoring the property to its original condition; and that an award of $161,000 was objectively reasonable in light of Harder's reason personal and in light of the diminished market value.[11]
The court concludes that "[the record shows that Harder's property could be reasonably restored by replacing at least some of the mature Sitka spruce with saplings or small trees and that because the property's large trees were 'growing in a forested environment where the root zones [were] intertwined' it was not possible to 'replace that exact tree in that environment'" This holding suggests that it was reasonable for Harder to replant small trees in order to restore the property damaged by the Wiersums, but it was unreasonable for him to plant trees similar in size to those that were cut down. But Harder specifically testified that the size of the trees was part of what contributed to his enjoyment of the property: he described the privacy provided by the trees, the ravens that once frolicked in the trees, and the *577 overall beauty of the property. Harder also explained how because of the trespass, he had lost his privacy, he no longer heard the ravens in the trees, and the entire property had been "destroyed." It was for the jury and not this court to determine whether Harder's reason personal was such that the compensatory restoration damages should cover the costs of the larger, more expensive trees and whether, to the extent these restoration costs exceeded diminished market value, they were objectively reasonable in light of the reason personal and in light of the diminished market value.[12]
Applying our standards of review to the jury's damages award, reversal was appropriate only if the evidence, when viewed in the light most favorable to Harder, "was such that reasonable persons could not differ in their judgment." [13] This standard clearly was not met. It was undisputed that the Wiersums significantly altered the character of Harder's property; the Wiersums clear-cut an entire hillside, destroying at least 70 of Hardex's large trees in the process. Thus a significant compensatory damages award was not unwarranted. Four different expert witnesses testified on the cost of restoring the land, and their estimates varied widely: an arborist testified that it would cost $161,000 to transplant 70 Sitka spruce that were nine to ten feet tall and an additional $162,500 to replace the forest ground cover; a horticulturist testified to a different method of transplanting larger trees and estimated it would cost $620,537 to restore Harder's property; another arborist estimated restoration would cost about $34,000 to replant smaller Sitka spruce transplanted from other areas of Kodiak; and an expert in real estate testified that the value of the lot would be "minimally affected, if at all" by the removal of the trees. The evidence presented at trial thus established that although the property had not suffered any diminution in market value as a result of the lost trees, restoration would cost as much as $620,537. Given the conflicting evidence and the variety of testimony on the costs of restoration-which the jury and not this court had the opportunity to weigh and to judge-it was within an acceptable range of reason for the jury to conclude that an award of $161,000 in compensatory restoration damages was appropriate.
Moreover, the court's conclusion that Harder's property could reasonably be restored by replacing some of the mature Sitka spruce with saplings or smaller trees relies exclusively on expert testimony provided by the Wiersums.[14] But as the court itself recognizes, "generally the only evidence that should be considered [in reviewing the denial of a JNOV motion] is the evidence favorable to the non-moving party." [15] It is improper for the court to rely on evidence presented by the Wiersums to conclude that the restoration award was unreasonable, and none of the evidence presented by Harder supports the court's conclusion.[16] The court today acts in direct disregard of the proper standard of review.
By reversing the jury's damages award, which was supported by ample evidence in *578 the record and based on proper jury instructions, the court invades the province of the jury without any justification for so doing. We have long relied on juries to serve as the quintessential collective "reasonable" person and entrusted them to make important factual determinations.[17] A jury of twelve did exactly that here and arrived at a consensus after following proper jury instructions and evaluating conflicting evidence, and yet the court holds their determination was unreasonable. I disagree with this holding and therefore dissent from the court's decision to vacate the damages award and order a new trial on damages.[18]

, McCleskey v. Kemp, 481 U.S. 279, 311, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (internal quotation marks and alterations omitted).

. Barry v. Edmunds, 116 U.S. 550, 565, 6 S.Ct. 501, 29 L.Ed. 729 (1886).

. Heynen v. Fairbanks, 293 P.3d 470, 474 (Alaska 2013) (quoting Korean Air Lines Co. v. State, 779 P.2d 333, 338 (Alaska 1989)) (internal quotation marks and alterations omitted).

. Id.

. Cameron v. Chang-Craft, 251 P.3d 1008, 1018 (Alaska 2011) (quoting City of Delta Junction v. Mack Trucks, Inc., 670 P.2d 1128, 1130 n. 2 (Alaska 1983)) (internal quotation marks omitted).

. Heynen, 293 P.3d at 474 (internal quotation marks omitted).

. Restatement (SEconp) or Torts § 929(1)(a) cmt. b (1977) (emphasis added).

. 947 P.2d 1356, 1360 (Alaska 1997).

. Id. (emphasis added).

. See id.

. See id.

. See id.

. Heynen v. Fairbanks, 293 P.3d 470, 474 (Alaska 2013) (quoting Korean Air Lines Co. v. State, 779 P.2d 333, 338 (Alaska 1989)) (internal quotation marks and alterations omitted).

. The court relies on "{the record" to hold that Harder's property could be reasonably restored by replacing mature Sitka spruce with saplings or smaller trees and that it was not possible to fully replicate the environment on Harder's property. But the only evidence in the record to support this conclusion was testimony provided by an arborist appearing on the Wiersums' behalf.

. Cameron v. Chang-Craft, 251 P.3d 1008, 1018 (Alaska 2011) (emphasis added).

. - For support the court cites Heninger v. Dunn, 101 Cal.App.3d 858, 162 Cal.Rptr. 104, 108-09 (1980), a case from the California Court of Appeal. Heninger established that in California, restoration costs may exceed diminution in value where there is a reason personal. Id. at 107-08. Heninger also established, however, that such costs "may be unreasonable or excessive in relation to the damage inflicted upon the land or its value prior to the trespass." - Id. at 108-09 (internal citations omitted). The case therefore recognizes a rule that fundamentally differs from our own jurisprudence in that the determination of whether costs are unreasonable does not take into account the reason personal. See id. Moreover, Heninger was not a jury case. Id. at 106.

. See Sioux City & Pac. R.R. Co. v. Stout, 84 U.S. 657, 664, 17 Wall. 657, 21 L.Ed. 745 (1873) (Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men [and women] know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.").

. _I also disagree with Justice Carpeneti's partial dissent's conclusion that the admission of evidence of Harder's contract with the jury "fatally infected the jury's finding that Harder had a 'reason personal' that would justify the use of restoration damages at all." The jury's reason personal finding was amply supported by other evidence in the record that was properly admitted: Harder testified that he had purchased the Monashka property for its natural beauty, that he had fond memories of hiking and fishing in the area as a boy and of spending time on the property with his friends and family over the years, that he had owned the property for over 30 years, that he had always intended to keep Lot 1A, that he intended to live there once his son had graduated and he had sufficient funds to build a house, and that the trees had contributed to the property's natural beauty and privacy. Harder's sister confirmed that Harder intended to build a cabin on the property, and a real estate agent also confirmed that Harder had refused to sell the property. Thus any error in the superior court's decision to admit Harder's contract with the jury was at worst harmless error and did not provide grounds for reversal.